# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

Civil Action No. 5:17-CV-00207-FL

|  |  |  |
|---|---|---|
| Gordon Gravelle and CodePro Key Corp. | ) | |
| | ) | |
| Plaintiff. | ) | **COMPLAINT** |
| | ) | |
| vs. | ) | (Jury Trial Demanded) |
| | ) | |
| KABA Ilco Corp., Frank BelFlower and | ) | |
| Charles Murrary | ) | |
| Defendants. | ) | |

------------------------------------------------

NOW COMES Plaintiff, Gordon Gravelle ("GRAVELLE"), acting in proper person, and CodePro Key Corporation ("Codepro Key Corp"), hereby files this Complaint against the Defendants, Kaba Ilco Corp ("KABA ILCO"), Frank BelFlower ("Belflower") and Charles Murray ("Murray"), and alleges as follows:

-1-

## I. Nature of the Action

1.  Plaintiff brings this action on behalf of himself and as an officer of CodePro Key Corporation.

2.  Defendants knowingly, willfully and intentionally engaged in False and Deceptive advertising with respect to the marketing and promotion of their electronic key cutting machine, namely the EZ CODE ("EZ CODE").

3.  Specifically, Plaintiff asserts that between early 2008 and late October 2013, inclusive, the Defendants in connection with the marketing and promotion of their EZ CODE machine, with unlawful intent to wrongfully induce sales, not only knowingly and willfully labeled, but also falsely advertised, that their EZ CODE machine had "patent pending" features which were exclusive to their product. (Hereinafter, "CLAIMS").

4.  Such conduct by the Defendants was unlawful, and strictly prohibited under The Lanham Act; Federal Patent law, and nation wide state statutes governing false/deceptive marketing, including but not limited to, North Carolina's Deceptive trade practice act, General Statute § 75, all of which readily allows for actual damages, reasonable attorney fees, trebled damages. In the Alternative, an award of punitive damages.

-2-

5. Defendants conduct was also unlawful in that it was contrary to the foreign Competition Act of Canada, which allows in part, an entitlement of damages in connection with fees incurred to investigate false and misleading advertising by a business competitor.

## II. Jurisdiction and Venue

6. This is an action to recover monies arising from Defendants who acting alone or in concert with other, falsely advertised that the EZ CODE machine had "patent pending" features, in direct violation of Lanham Act, Section 43; and/or Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1 *et seq* ("UDTPA"), and/or the Competition Act o f Canada, as alleged below.

7. The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that the aggregate amount in controversy exceeds the sum of $ 75,000.00; minimum diversity exists, exclusive of interest/costs; and complete diversity of citizenship, as each of the parties reside in different countries.

8. This Court has personal jurisdiction over Defendants because it is either a jurisdiction in which they reside, and/or had carried out their deceptive business practices.

9. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

-3-

## III. PARTIES

10. Plaintiff is a foreign citizen and resident of Thunder Bay, Ontario, Canada.

11. At all times material to this Complaint, Plaintiff owned and operated three manufacturing companies, namely CodePro Manufacturing ("Codepro"), Rapidkey Industries ("Rapidkey") and Codepro Key Corporation ("Codepro Key Corp"), with their principle place of business, incorporation and headquarters having been located in Thunder Bay, Ontario, Canada.

12. CodePro, Rapidkey and CodePro Key Corp restricted their operations mainly to the design, consultation, distribution and manufacturing of state-of-the-art electronic key cutting machines, similar to that of the EZ CODE, *supra*, being manufactured, advertised and distributed by the Defendants.

13. Hereinafter, Plaintiff, as an individual, and both CodePro Manufacturing / Rapidkey Industries, as sole proprietary businesses, and CodePro Key Corp, a corporation, shall be collectively be referred to as "PLAINTIFF".

14. Defendant Charles Murray ("Murray"), an individual, resides in the state of North Carolina, and was the previous operations manager and/or marketing director for Kaba Ilco Corp, having been duly employed to carry out the companies day to day operations.

-4-

15.    At all material times to this Complaint, acting alone or in concert with others, Murray had formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Kaba Ilco Corp., including the unlawful acts and practices set forth in this Complaint. Murray was also lead member of the companies marketing team, serving as final decision maker, either wholly or substantially, on advertising claims across all channels of distribution and media platforms.

16.    Defendant Frank BelFlower ("Belflower), is an individual who resides in the state of North Carolina and was the previous officer, director and general manager, being formally employed by Kaba Ilco Corp, duly responsible for overseeing day-to-day operations of the company.

17.    At all material times to this Complaint, acting alone or in concert with others, Belflower had formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Kaba Ilco Corp., including the unlawful acts and practices set forth in this Complaint. Belflower was also an officer, director and operational manager, either serving or responsible as final decision maker, either wholly or substantially, on advertising claims across all channels of distribution and media platforms.

//

-6-

18. Defendant Kaba Ilco Corp (hereinafter "KABA" and "Corporate Defendant"), is a limited liability company chartered under the law of and with its principle place of business located within the state of North Carolina located at 400 Jeffreys Road, Rocky Mount, North Carolina.

19. At all material times to this Complaint, Murray and Belflower, during the normal course of their employment, were either officers or general managers, or both, of corporate defendant Kaba. Which in turn, gives rise to vicarious liability against Kaba for their tortious and unlawful conduct.

20. Additionally each of the parties are jointly and severally liable for the acts and practices alleged below.

## IV. COMMERCE

21. At all material times to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

//

-7-

## V. Plaintiffs' Business Practices

22.    Plaintiff Gravelle owned and operated Rapidkey Industries, a sole proprietor
       business, formed back in or about 2011.

23.    Plaintiff CodePro Key Corp, was a corporation formed back in July 2008, with its
       principle place of business and incorporation in Thunder Bay, Ontario, Canada.
       Gravelle was president and sole share holder.

24.    RapidKey Industries and CodePro Key Corp restricted its business operation to the
       design, marketing and distribution of electronic key cutting machines with vary
       similar characteristics to the electronic key cutting machine have been marketed,
       and distributed by the defendants Kaba, namely the EZ Code.

25.    In late 2013, Gravelle initiated a civil lawsuit against Kaba, and incurred substantial
       monetary costs in doing so, both actual and loss of remuneration, in order to prove
       or disprove, the "patent pending" claims which KABA had advertising, and affixed
       to their EZ Code key cutting machines.

26.    In early 2014, KABA by and through their counsel of record, Albert Allan, filed a
       responding ANSWER with the court, which expressly denied any and all allegations
       of false patent pending keys for the EZ Code, by way of global marketing and/or the
       affixing of labels to the actual machine.

-8-

27.   It was not until April 29, 2015, on the last day of the parties right to conduct
      discovery, did KABA concede, by and through admissions, that their "patent
      pending" claims were wholly and literally false, due to the inherent fact that they had
      never even applied for a provisional patent in connection with the EZ Code.

28.   Specially, KABA had marketed "patent pending" features of automatic key detection
      and automatic calibration.

29.   Such features were material in nature, to the extent they would readily influence a
      buyers purchasing decision.

30.   Between November 2008 and April 29, 2015, KABA had intentionally and wrongfully
      concealed such false patent pending claims, as to wrongfully avoid legal action by
      the Plaintiff.

31.   KABA acting alone or in concert with their attorney, Albert Allan, filed court
      documents which were erroneous in nature, with the expressed intent to avoid
      corporate liability, further mislead the public at large, and to knowingly commit fraud
      upon the court.

32.   Morever, during the discovery process, KABA acting alone or in concert with their
      attorney, Albert Alan, wrongfully concealed contact information for salient officers,
      directors, and/or employees of KABA.

33. Specifically, the following individuals: Frank Belflower (former CEO), Chuck Murray (formal general manager and/or marketing director), and Mike Tuner (former lead product developer for the EZ Code)

34. It remains inconceivable and unconscionable for the prior material representations by KABA whether acting alone or in concert with their attorney, Albert Alan, that they did not have any last known contact information for their formal CEO and operational manager, Frank Belflower. To the extent that such representation was patently absurd. Mr Belflower had been with the company for over twenty years, and did not retire until mid 2015.

35. It remains patently inconceivable and unconscionable for the prior material representations by Kaba whether acting alone or in concert with their attorney, Albert Alan, that they did not have any last known contact information for their formal operational manager, Charles Murray. To the extent that such representation was patently absurd. Mr Murray had been with the company for over 10 years and did not retire until early 2015.

36. It is inconceivable and unconscionable for the prior material representation by Kaba whether acting alone or in concert with their attorney, Albert Alan, that they did not have any last known contact information for their former project manager assigned to oversee the EZ CODE design, namely Mike Turner. Mr Turner had also been employed by the company for over 15 years.

-10-

37.   Kaba acting alone or in concert with their attorney, Albert Allan, who was and remains an officer of the court, engaged in such egregious misconduct, for the sole purpose of thwarting a civil action on its merits, as to wrongfully avoid civil liability for their tortious and unlawful conduct.

38.   The infringed conduct amounts to misconduct, deception and/or fraud upon the court, executed throughout civil proceedings.

39.   As a direct result, Plaintiff was wholly and wrongfully prevented from prosecuting his prior civil action on its merits, before the court. Most notably, Gravelle wasn't able to notice the examinations of various individuals which were essential absolute to the proper disposition of the prior civil action against KABA.

40.   Private investigators were unable to locate Mike Turner prior to the close of discovery, despite their diligent attempts to do so.

41.   The prior court had refused to extend the time for the parties to conduct discoveries. No prior relief by Gravelle had been sought under FRCP 60.

42.   Kaba by law, had to keep and maintain the contact information and employment records for their formal officers, directors and or employees, including but not limited to: Frank Belflower, Charles Murray, Mike Turner.

-11-

43.    At all material times to the filing of the previous action, the attorney for Kaba, Alan

Albert, as an officer of the court, had an affirmative obligation pursuant to Federal

Rule of Civil Procedure, section 11, not to file erroneous documents and/or false

facts, with the court.


44.    No documents whatsoever, exist or existed, to support the prior ANSWERING brief

which had been filed by Albert Allan, on behalf of Kaba, that affirmatively denied

any and all allegations of false patent pending claims and/or the affixing such labels

to the EZ Code machine, stating "other patent(s) pending".


45.    The aforementioned denials were material in nature, and advanced in bad faith

and/or frivolous intent to deceive the Plaintiff, the public at large, and ultimately the

court.


46.    Then, in December 2015, attorney Albert Alan, on behalf of Kaba, brought a motion

for summary judgment, citing as an inherent fact, that at no point during the course

of litigation, did KABA ever DENY that such patent pending claims were false.


47.    Then, in March 2016, Gravelle had requested in writing, for attorney Albert Alan, to

correct his erroneous filings with the Court. To date, Mr Alan remains steadfast in

his refusal to do so, despite having a professional obligation to engage in such

remedial action.

48. In May 2016, the court granted Kaba's motion for summary judgment, citing in main, that Plaintiff Gravelle did not prove actual damages and/or failed to prove that automatic key detection and calibration features for the EZ Code, were sufficient operating characteristics in nature to readily influence a buyers purchasing decision.

49. Gravelle had provided sworn evidence in opposition to summary judgment, citing in part, that such patent pending claims would wrongfully influence a buyers purchasing decision.

50. On April 12, 2017, the Fourth Circuit Court of Appeal, affirmed the decision of May 2016, citing in part, that Gravelle could not rely on his own sworn evidence, to establish a material fact, precluding summary judgment, speaking to the issue of whether or not the false patent pending features, such as automatic key detection and calibration, were material in nature, to potential influence a buyers purchasing decisions.

51. Neither the trial court nor the appellant court fully appreciate the significance or marketing value Kaba enjoyed, linking false patent pending claims, to both automatic key blade detection and automatic depth calibration.

-13-

52.  Had Kaba whether acting alone or in wrongful concert with their attorney, Albert Alan, not concealed the last known contact information for materials witnesses, Frank Belflower, Mike Turner and/or Wayne Hopkins, the Plaintiff states in earnest he could have properly and easily noticed and taken their deposition, and each of them, which in turn, would have readily proved that such patent pending features, like automatic key blade detection and/or automatic calibration, would have readily influenced a buyers purchasing decision.

53.  For example, Mike Turner, had been actively involved in the locksmith industry, and the design and development of key cutting machines, for over twenty years. As before, Mike Turner was the lead design and product specialist for KABA, for in part, the development and marketing for the EZ Code machine. Mr Turner did not retire from KABA prior to 2010. Yet, KABA denied having any last known contact information for their long time product development and technical specialist. Such claims were and remain inconceivable, save defendants, and either of them, having unlawfully destroyed their employment records for Mr Turner.

//

-14-

54.     Frank Belflower had also been actively involved in the locksmith industry, and/or the marketing/sales of electronic key cutting machines for over 25 years. Mr Belflower was their formal COO, officer and general manager, who did not retire until mid 2013. Yet a few months later, Kaba by and through their counsel, Albert Alan, expressly denied having any last known contact information for Mr Belflower. Such affirmative claims were and remain inconceivable, save defendants having unlawfully destroyed such employment records, or with issuance of directions for others to do so.

55.     Kaba had further and fraudulently denied having any last known contact information for long time employee and actual design engineer, Wayne Hopkins, who in turn, was actively involved in the final development of the EZ-Code machine. Mr Hopkins did not retire from KABA prior to 2010. Yet, KABA denied having any last known contact information for their long term machine shop engineer. Such affirmative representation was and remains inconceivable, save defendants, and either of them, having unlawfully destroyed such employment records, either directly, or with issuance of directions for others to do so.

56.     Federal Rule of Civil Procedure 26, expressly provides that such last known contact information shall be exchanged between all parties to the action. At all material times, the attorney of record bournes an ongoing professional obligation to supplement initial disclosures.

-15-

57.  Kaba while acting alone or in concert with their attorney, Albert Alan, intentionally and wrongfully concealed such last known contact information for their long serving employees, for the sole purpose of egregiously avoiding monetary corporate liability in excess of $ 1 million, and such was the consequence of their actions.  Gravelle pursuant to Lanham act, had sought disgorgement of profits, KABA had unlawfully enjoyed from the sales generated by the EZ Code machine.  In light of such remedy, Gravelle did not vigorously set out to establish and/or quantify actual monetary loss, despite same having been readily sustained.

58.  For example, the Competition Act of Canada, expressly provides in part, a party to be afforded costs incurred by a business investigating and pursuing false marketing campaigns by a business competitor.  In the prior action, Gravelle sustained such monetary losses, encompassing actual and/or substantial loss of remuneration, pursing the false patent pending claims by KABA.  Their false and deceptive marketing campaign was mounted on a global scale lasting for over six years.

59.  Plaintiffs state that no other reason or explanation exists to conceal such last known employment contact information, save to unlawfully avoid corporate liability and/or exposure.

60.  Federal Rules of Civil Procedure 60, clearly permits relief of a prior judgment(s), obtained by misconduct of a party, and/or fraud practiced upon the court.

-16-

61. Plaintiffs did not unearth until April 29, 2015, that the patent pending claims by Kaba for their EZ Code machine, were in fact, literally false, due to KABA having continuously concealed such facts sooner.

62. Kaba's deceptive trade practices wrongfully diluted product market share, and/or diverted sales away from Gravelle, Rapidkey and/or Codepro Key Corp. To the extent that neither of the companies could sustain a viable presence within the market place.

63. Rapidkey Industries was sold in or about April 2015 at far less to market value, due to the false and deceptive marketing practices Kaba had incorporated on a global scale, dating back to early 2008, for their competitive EZ Code machine.

64. CodePro Key Corp sold its interest in the Rapidkey 7000 machine, in or about April 2015 at far less to market value, due to the false and deceptive marketing practices Kaba had incorporated on a global scale, dating back to early 2008, for their EZ Code machine

65. Accordingly, both Gravelle and Codepro Key Corp. suffered immeasurable monetary loss and injury.

## VI. DEFENDANTS BUSINESS PRACTICES

66. KABA promotes being the world's premier manufacturer of the most extensive line of quality key blanks available on the market today, producing over 1 million key blanks per week, in their own state-of-the-art ISO certified manufacturing facility. [FN1]

67. The Kaba-Ilco brand is known worldwide for its exceptional quality at competitive prices. *Id.*

68. Defendant KABA further promotes....... that in addition to key blanks....they are a leader of key cutting/duplication machines.

69. Their parent company, the KABA group, is backed by 145 years of experience, and is ranked the fourth largest leader in the worldwide security industry.

70. The KABA group is a publically traded company listed on the SIX stock exchange in Switzerland, and promotes through its operating code of conduct, that they may be held liable for wrongful actions taken by its associated parties.

---

[FN1] – http://www.kaba-ilco.com/key-systems/About-Us/293270/company-overview.html

## VII. Parties Salient Prior History

71. Codepro had commenced manufacturing electronic key cutting machines back in 1995, with its first market viable commercial machine, the CodePro 4500 ("4500") being sold in or about July 1998.

72. Subsequently, Codepro managed to obtain international market share, as evidenced by sales in approximately 14 countries.

73. In or about July 2004, defendants expressed a strong interest in the 4500 machine as manufactured and sold by the Plaintiff.

74. To the extent that in November 2006, the parties entered into a purchase and sales agreement (hereinafter "AGREEMENT"), whereby in part, KABA ILCO secured the intellectual property rights for the 4500 machine.

75. Between November 2006 and April 2008, inclusive, Gravelle states he worked exclusively as a consultant for KABA ILCO to design and develop a new electronic key cutting machine, which in turn, was subsequently sold and marketed internationally, as the EZ-Code (hereinafter "EZ-CODE")

-18-

76. On or about April 22, 2008, the parties terminated their consulting agreement, with Kaba being steadfast about Gravelle being bound by a 5-year world wide non-competition / non-solicitation agreement, which was determined by a duly licensed arbitrator, in or around October 2011, having been unlawful in nature as being overly broad to the extent same was unenforceable as unlawful restraint of trade under laws of North Carolina.

77. In or about July 2010, Rapidkey and CodePro Key Corp. invested considerable amount of time and financial resources into the development of a new state-of-the-art electronic key cutting machine, named the Rapidkey 7000 ("Rapidkey"), which incorporated cutting edge technology.

78. In or about July 2011, Plaintiff first introduced and sold his Rapidkey 7000 machine to the public.

-19-

## Current Allegations - Deceptive and False Advertising

79.   The Defendants in connection with the marketing and promotion of their EZ CODE machine, falsely advertised/misrepresented, and continues to falsely advertise, that said machine has "patent pending" features. (Hereinafter, "CLAIMS")

80.   Specifically, the CLAIMS falsely assert ....."patent pending"......Automatic key edge detection.....and automatic depth calibration.

81.   Additionally, each EZ-Code machine sold commercially throughout North America, contained a serial number name plate, that falsely displayed the phrase "other patents pending".

82.   The EZ CODE machine was first offered for sale back in December 2007.

83.   Upon information and belief, Defendants to date, have sold approximately 700 EZ Code machines, with a average retail sales price around $ 4,199 USD.

84.   Against this backdrop, the Defendants have realized a gross profit margin around $ 1.4 million, which equates to about $ 2,000 per unit sold.

-20-

85.	On or about August 5, 2013, Rapidkey having been a direct rival business competitor ready to launch a newly developed revolutionary electronic key cutting machine, visited Defendant KABA-ILCO corporate website and observed such "patent pending" CLAIMS on a commercial marketing brochure for their EZ CODE machine.

86.	On August 6, 2013, the Gravelle spoke telephonically with KABA ILCO general manager and Chief Operating Officer, Frank BelFlower ("BELFLOWER"), and requested the status of the patent pending CLAIMS.

87.	Mr BELFLOWER was very _evasive_ with his answers regarding the patent pending claims.

88.	This in turn, prompted the Plaintiff to conduct a patent search through the USA online patent office website. No such related patents were found pertaining to the CLAIMS by KABA, despite best efforts to locate same.

89.	Gravelle asserts that with the EZ-CODE machine having been commercially available for the past six years, said patent application should have been fully processed and listed within the patent office database.

-21-

90. Nevertheless, on August 20, 2013, the Plaintiff emailed in part, Defendant KABA ILCO, general manager, Mr BELLFLOWER, indicating that he was about to launch a new electronic key machine, and did not want to knowingly infringe on any of the alleged pending patents, sought for the EZ-CODE machine, as they advertised and promoted on their corporate website.

91. As part of the email, the Plaintiff specifically requested the status of the pending patent application, and any supporting documentation associated therewith.

92. In closing, the email clearly noted that this matter was "time sensitive" and as such, an informative response was fully expected within 2 days.

93. On September 4, 2013, or about 2 weeks later, Plaintiff once again visited their corporate website, observing the same brochure for the EZ Code machine, which predominantly asserted "patent pending" claims.

94. As of September 17, 2013, Defendants had failed to provide any type of response, relating to their patent pending claims for the EZ CODE, which in turn, brought rise to this previous action.

-22-

## First Claim for Relief)

### (Relief from Prior Judgment between Gravelle and Kaba)

95. Plaintiff incorporates all preceding pleadings as set forth in full herein.

96. Rule 60(b) and (d) of the Federal Rules of Civil Procedure clearly permits a court to set aside a prior judgment, by way of an independent action, which was the product of wrongful acts by the parties, and or amounted to fraud upon the court.

97. Kaba acting alone or in wrongful concert with their attorney of record, Albert Alan, had engaged in wrongful and unethical acts, in connection with various prior judgments, in the matter of Gravelle v Kaba, docket No. 5:13-cv-00642-FL, Judge Louise Wood Flanagan.

98. The laws of equity further demands that such judgments be set aside, and the action be permitted to proceed.

//

99.   Specifically, Plaintiff Gravelle seeks to set aside the following prior judgments:

(1)   Order granting Kaba summary judgment, May 9, 2016;

(2)   The award of attorneys' fees after the grant of summary judgment, July 15, 2016

(3)   The award in granting attorney fees relating to motion to compel examination, dated December 23, 2015.

## SECOND CLAIM FOR RELIEF

## (UNFAIR AND DECEPTIVE BUSINESS ACTS CONTRARY TO N.C.G.S. § 75)

100.  Plaintiff incorporates all preceding pleadings as set forth in full herein.

101.  Defendants and each of them, wantonly, recklessly and/or negligently committed unfair and deceptive acts, in or affecting commerce, which in turn, was prohibited under North Carolina General Statute § 75 and/or the Landam Act and/or Competition Act of Canada.

//

-24-

102.  The prior business actions taken by Defendants was and remains unfair as it clearly offends established public policy, and furthermore, such conduct is deemed immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

103.  In the alternative, or in conjunction therewith, the prior business action and practices taken by the Defendants were "deceptive" in nature, as such conduct unquestionably had the capacity to deceive its intended audience, and such was the case.

104.  Such wanton and unethical conduct by Defendants, and each of them, wrongfully thwarted the free exchange of commercial product development, which in turn, effects all consumers, for years to follow.

105.  Such conduct resulted in Plaintiffs having sustained injuries, both actual and presumed, and will continue to sustain such injury, for years to come.

106.  Wherefore, Plaintiff seeks any award of damages, and that such award of damages, be trebled, pursuant to N.C.G.S. § 75-16. In the alternative, Plaintiff seeks an award of punitive damages.

-25-

## THIRD CLAIM FOR RELIEF

## (DAMAGES PURSUANT TO COMPETITION ACT OF CANDADA)

107. Plaintiff incorporates all preceding pleadings as set forth in full herein.

108. Defendants willfully exported the EZ Code machine into Canada, with false patent markings having been affixed to each unit.

109. Defendants further promoted and marketed the EZ Code machine, on a global scale, including throughout Canada, which falsely stated that such machine and material features, such as automatic key blade detection and automatic calibration, which were subject to one then one provision patent.

110. At no point in time had the Defendants, and either of them, ever sought a provision patent against their EZ Code machine, as continuously advertised and marketing on a global basis, from early 2008 through October 2013.

111. Defendants and either or them, willfully concealed that their patent pending claims were literally false, which in turn, prevented Plaintiff from freely incorporating such material features to their competitive code machine, The Rapidkey 7000.

112. As a direct result, Plaintiffs' were compelled to initial legal proceedings against Kaba, in October 2013, in order to investigate the validity of the patent pending claims against the competitive EZ Code machine.

113. Whereupon, Plaintiffs' incurred substantial time and monetary costs pursing such claims, before a foreign tribunal, including loss of remuneration, filing fees, travel fees, and so forth.

114. KABA acting alone or in concert with their attorney of record, Albert Alan, who was and remains an officer of the court, wrongfully concealed the whereabouts of their employees, in order to most egregiously avoid corporate expose, and such were the consequences of their intended action.

115. Kaba by and through counsel, also falsified material facts filed with the court, in order to avoid liability, to the extent same amounted to fraud upon the court. This in turn, drove up the cost of litigation.

116. The Competition Act of Canada allows for in part, a party to be reimbursed for costs incurred in connection with the investigation of a business competitor, engaged in false and deceptive marketing, and/or the importation of products into Canada, with false product markings.

117. Plaintiffs plead and rely upon the Competition Act of Canada, in support of an award of monetary damages as against the Defendants, and each of them.

118. Gravelle was also most egregiously and wrongfully exposed to substantial attorney fees being awarded to KABA, due sole to their frivolous filings and/or material representations to the court, in the matter of Gravelle v Kaba, No. 5:13-cv-642-FL.

119. Kaba has an ongoing history of wilfully engaging in unlawful conduct towards the Plaintiff and his business.

-27-

## DEMAND FOR JURY TRIAL

118.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays against the Defendants for judgment finding and ordering as follows:

(A)    an order pursuant to FRCP 60(b) and (d), seeking to vacate prior final judgments, including the one dated May 9, 2016, in the matter of Gordon Gravelle v Kaba Ilco Corporation, arising from fraud upon the court, misrepresentation and/or the wilful misconduct of Kaba and/or their previous attorney, Albert P. Alan;

(B)    an award of damages pursuant to section 43 of the Lanham act, as against Kaba, which includes but not limited to, unjustly derived profits and actual monetary damages/injury sustained by Plaintiff;

(C)    an award of damages pursuant to N.C.G.S. § 75-16 and/or Competition Act of Canada, as against defendants, and each of them, whether actual, presumed, expectancy and/or loss of business opportunity;

(D)    treble damages pursuant in part, to North Carolina general statute § 75-16, for Defendants having engaged in willful and malicious false advertising. In the alternative, punitive damages, to be elected by the Plaintiff prior to commencement of jury trial;

-28-

(E)     an award of reasonable attorney fees (if applicable), expenses and/or substantial loss of remuneration;

(F)     a declaration that the Defendants, and each of them, are jointly and severally liable to the Plaintiff(s), for any judgement being obtained against them, and either of them, in this underlying action;

(G)     an award of both post and pre-judgment interest as allowable by law; and

(H)     an award of any such other or further relief as this Court may deem proper and just.

Respectfully submitted this 28th day of April, 2017.

By: _____

Gordon Gravelle
238 May Street N.
Thunder Bay, ON P7C 3P8
Canada

Tel: (807) 629-9024
Fax: (807) 285-2272

Plaintiff in proper person.